IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00207-RMR-MDB

**PHEBE DIAZ, individually and as Personal Representative
of the Estate of DAVID DIAZ, deceased,**

    Plaintiff,

v.

**24 HOUR FITNESS USA, LLC d/b/a 24 HOUR FITNESS,**

    Defendant.

**24 HOUR FITNESS USA LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant 24 Hour Fitness USA, LLC ("Defendant" or "24 Hour"), through its attorneys, Dietze and Davis, P.C., submits the following Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6):

**Certificate of Conferral**

Defense counsel conferred with Plaintiff's counsel about this Motion. Plaintiff opposes the relief requested herein.

**I.    INTRODUCTION**

Plaintiff Phebe Diaz ("Plaintiff"), as the personal representative of the estate of David Diaz ("Decedent"), alleges Decedent was injured in a steam room that 24 Hour Fitness ("24 Hour") failed to maintain or warn club members about. Plaintiff claims that on January 13, 2023, Decedent visited a 24 Hour club located at 1892 Southgate Road, Colorado Springs, Colorado

1

80906 and while he was using the steam room, a steamer spout "malfunctioned and exploded" spraying hot steam onto Decedent, causing burns and blistering. Later that day, Decedent went to the emergency room for injuries which included but were not limited to burns. After twelve days of in-patient care, Decedent passed away on January 24, 2023.

Plaintiff has asserted three claims for relief against 24 Hour: Premises liability pursuant to Colorado's Premises Liability Act, C.R.S. § 13-21-115 ("PLA"), gross negligence, and negligence *per se*. Plaintiff also seeks wrongful death damages pursuant to C.R.S. § 13-21-201 *et. seq.* and survival damages pursuant to C.R.S. § 13-20-101.[1] However, as will be discussed herein, Plaintiff's claims against 24 Hour must fail.

## II. FACTUAL BACKGROUND

Plaintiff's Amended Complaint (Doc. 13) alleges Decedent, as an "invitee" of 24 Hour, went to the 24 Hour club located at 1892 Southgate Road, Colorado Springs, CO 80906 (the "Facility") on January 13, 2023. Doc. 13 ¶¶ 25, 52.[2] Plaintiff alleges that a steamer spout in the steam room exploded, that a leak was present in the front plate gasket of the boiler for the steam room, and that surfaces of the boiler were corroded. *Id.* at ¶¶ 26, 30-31. Plaintiff alleges Decedent sustained injuries when the steam spout in the steam room exploded causing a "large amount of explosive, hot steam to come into direct contact with Mr. Diaz's airways and the anterior portion of his body." *Id.* at ¶ 33. Plaintiff pursues claims against 24 Hour arising out of what she claims

---

[1] Though asserted as Plaintiffs' Fourth and Fifth Claims for Relief, these statutes do not create independent causes of action. *See Steedle v. Sereff,* 167 P.3d 135, 140 (Colo. 2007) (wrongful death claim is merely derivative of the injury to the decedent); *Espinoza v. O'Dell*, 633 P.2d 455, 466 (Colo. 1981) (survival statute does not provide an independent basis for liability but merely permits a personal representative to stand in the decedent's shoes.)
[2] 24 Hour admits that at the time of the incident it was a "landowner" as defined by the PLA.

were injuries and damages Decedent sustained due to 24 Hour's acts and omissions in maintaining the steam room.

On December 12, 2022, Decedent became a member of 24 Hour Fitness and executed a Club Membership Agreement ("Agreement") setting forth the terms and conditions of his membership. A copy of Decedent's Membership Agreement is attached hereto as <u>Exhibit A</u>.[3] This Agreement contains an exculpatory clause under the conspicuous heading "**RELEASE OF LIABILITY AND ASSUMPTION OF RISK**", which expressly provides:

> Using the 24 Hour Fitness, USA, Inc. (24 Hour) facilities involves the risk of injury to you or your guest, whether you or someone else causes it. Specific risks vary from one activity to another and the risks range from minor injuries to major injuries, such as catastrophic injuries including death. **In consideration of your use of 24 Hour's facilities and/or participation in the activities offered by 24 Hour, <u>you understand and voluntarily accept this risk and agree that 24 Hour</u>, its officers, directors, employees, volunteers, agents and independent**

---

[3] The Membership Agreement may be considered by the Court on a Motion to Dismiss because "it is referred to in the complaint" and "central to the plaintiff's claims." *See Interstate Med. Licensure Compact Comm'n v. Bowling,* 2021 U.S. Dist. LEXIS 133859, at *37 (D. Colo. June 23, 2021); *see also Weise v. Colo. Springs,* 421 F. Supp. 3d 1019, 1031-32 (D. Colo. 2019) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.") (citation omitted). Here, the Amended Complaint refers to the Membership Agreement in Paragraph 23 ("On January 13, 2023, Mr. Diaz possessed a valid and effective gym membership at the Colorado Springs location.") and it is central to his claims because Plaintiff expressly alleges that in January 2023, Decedent was on 24 Hour's property as an invitee. In order for 24 Hour to owe any duty to a person on its premises, or for a person to even have access to any 24 Hour facility, a person must be a customer or member and sign a release of liability similar to the Membership Agreement Plaintiff executed. *See* <u>Exhibit A</u>. Thus, the Agreement's terms fundamentally define and govern Plaintiff and Decedent's relationship with 24 Hour at the time of the incident since Decedent was a "member," and the Membership Agreement is necessarily central to Plaintiff's claims against 24 Hour. After all, Decedent could not lawfully be on Defendant's premises as a customer unless he had joined 24 Hour Fitness and executed a Membership Agreement. Under Colorado law, such a document "is not considered a 'matter outside the pleading.'" *Yadon v. Lowry*, 26 P.3d 332, 336 (Colo. App. 2005). "The reason for the rule is obvious: 'If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document.'" *Id.*

>    contractors **will not be liable for any injury**, or any other damages, to you, your spouse, guests, unborn child, or relatives resulting from the actions or inactions, including negligence, of 24 Hour or anyone on 24 Hour's behalf or anyone using the facilities, including, without limitation, personal, bodily, or mental injury, or economic loss, **whether said use or said injury is related to exercise or not and whether using 24 Hour's services on its premises or not**. **This Release of Liability includes, without limitation, claims against 24 Hour for negligence, premises liability, and products liability**.  Further, you understand and acknowledge that 24 Hour does not manufacture fitness or other equipment at its facilities, but purchases and/or leases equipment.  You understand and acknowledge that 24 Hour is providing recreational services and may not be held liable for defective products.

*See* Agreement p. 6, ¶ 10 (Emphasis in original).

While David Diaz's death, regardless of the cause, is certainly tragic, Plaintiff fails to state viable claims for relief against 24 Hour.  First, Plaintiff's PLA claim against 24 Hour must fail.  Decedent agreed to a clear and unambiguous release of liability and assumption of risk provision when he executed the Agreement and commenced his membership with 24 Hour Fitness.  In executing the Agreement, Decedent assumed the risk of injury and agreed that 24 Hour would not be liable for any injury incurred at a 24 Hour facility. *See* Agreement ¶ 10.  The exculpatory provision in the Agreement is a material term and its application explicitly eliminates all liability on the part of 24 Hour for any injury whatsoever, including the injuries alleged by Plaintiff under a premises liability theory.

Second, Plaintiff's gross negligence claim cannot satisfy the plausibility standard because she fails to allege sufficient facts that permit more than a possibility of misconduct and because 24 Hour's alleged disregard for maintaining the steam room cannot amount to willful and wanton conduct.

4

Third, Plaintiff's negligence *per se* claim must fail because it is abrogated by the exclusivity of the Premises Liability Act and, alternatively, because it mistakenly relies on an after-the-fact inspection report that identifies issues with boiler components not related to the incident.

As a result, Plaintiff's Amended Complaint fails to state claims against 24 Hour for which relief can be granted, and Fed.R.Civ.P. 12(b)(6) warrants dismissal of her claims as a matter of law.

### III. APPLICABLE LAW

#### A. Motions to Dismiss under Fed.R.Civ.P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It requires "well-pleaded" facts that "permit the court to infer more than the mere possibility of misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, conclusory statements or legal conclusions unsupported by facts are insufficient. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Moreover, "[a] pleading

5

that offers . . . 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (citation omitted). The complaint must include direct or inferential allegations for all material elements necessary to sustain a recovery under a viable legal theory. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### B. Validity and Enforceability of Exculpatory Clauses

Under Colorado law, contracting parties may enter into exculpatory agreements. Such agreements in which one party specifically waives the other party's liability for its own negligence are valid and will be upheld pursuant to freedom of contract principles, provided the agreement is clear, unambiguous, fairly entered into, and in keeping with public policy. *See Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781 (Colo. 1989). "The determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine." *Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981). The Colorado Supreme Court in *Jones* set forth four factors a court must consider when determining whether an exculpatory agreement is valid: "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Id*.

Only the fourth *Jones* factor could ever potentially be at issue in this case. The first three factors relate to general public policy concerns about exculpatory agreements that "involve[] a service that the defendant is obligated to provide for the public or [that were] entered into in an unfair manner." *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004). Such

agreements may be unenforceable "[e]ven if the intent of the parties is unambiguously expressed in the contract." *Id*.

However, in cases involving "recreational activities," these public policy concerns carry no weight:

> Although we have not specified the precise circumstances in which a release agreement will be barred for affecting the public interest, we have noted that such agreements generally involve businesses suitable for public regulation; that are engaged in performing a public service of great importance, or even of practical necessity; that offer a service that is generally available to any members of the public who seek it; and that possess a decisive advantage of bargaining strength, enabling them to confront the public with a standardized adhesion contract of exculpation. **From this class of businesses, however, we have previously distinguished businesses engaged in recreational activities, which are not practically necessary and with regard to which the provider owes no special duty to the public**.

*Id*. (internal citations omitted) (emphasis added). Thus, the court in *Chadwick* held a hunting outfitter's exculpatory agreement was valid: "[l]ike the skydiving company in *Jones*, [the defendant in *Chadwick*] provides a recreational service, neither publicly regulated nor of great public importance, and therefore the contract . . . does not fall within the category of agreements affecting the public interest." *Id*. at 469 (internal citations omitted). The Colorado Supreme Court recently affirmed not only the validity of exculpatory clauses, but the *Jones* analysis as well. *See Miller v. Crested Butte, LLC*, 2024 CO 30, ¶ 49 ("Moreover, we have observed that in cases involving non-essential, recreational activities involving the risk of injury, exculpatory agreements like those at issue here did not give the party requiring the agreement a decisive advantage in bargaining strength so as to invalidate such agreements.")

7

Exculpatory clauses run the risk of being burdensome in length and confusing in word choice. Businesses that seek to be successfully released from liability thus need to thread the needle referenced by the U.S. Court of Appeals for the Tenth Circuit in *Anderson v. Eby*, 998 F.2d 858, 862 (10th Cir. 1993):

> Under Colorado law, those who draft releases face a difficult task. On the one hand, the releases must be clear and unambiguous or they are void per se. On the other hand … their parameters [must be] explicit and detailed. Otherwise, [their drafters] run the risk that the releases will be construed too narrowly. … [Thus] waivers often must contain exhaustive lists of items covered and/or terms of art to effectuate their purpose.

Accordingly, a relevant release must be "explicit and detailed" without resorting to reciting long lists of legal terms and jargon. *Id.*

### C. Exclusivity of the Colorado Premises Liability Act

The Premises Liability Act provides that "[i]n any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable only as provided in subsection (3) of this section." C.R.S. § 13-21-115(2). As a result, "a plaintiff may recover against the landowner pursuant to the [PLA] only and not under any other theory of negligence." *Lombard v. Colorado Outdoor Educ. Ctr., Inc.,* 187 P.3d 565, 574 (Colo. 2008). "Tort claims that are preempted by the PLA include claims of negligence *per se*[.]" *Tancrede v. Freund,* 401 P.3d 132, 134 (Colo. App. 2017) (citing *Lombard,* 187 P.3d at 574).

### D. Gross Negligence

In Colorado, gross negligence is "the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another; such a gross

8

want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness." *White v. Hansen*, 837 P.2d 1229, 1233 n.5 (Colo. 1992) (citing Black's Law Dictionary 1185-86 (4th ed. 1968)). "The common thread that separates [the concepts of willful and wanton misconduct, willful and wanton negligence, gross negligence, reckless conduct, and reckless negligence] from ordinary negligence is that the defendant's conduct is so aggravated as to be all but intentional." *Id.* at 1233. Whether conduct is purposeful or reckless is ordinarily a question of fact, "however, 'if the record is devoid of sufficient evidence to raise a factual issue, then the question may be resolved by the court as a matter of law.'" *Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 954 (Colo. App. 2011).

## IV.  ARGUMENT

### A.  Plaintiff's premises liability claim is barred by the exculpatory clause in Decedent's Membership Agreement

In consideration for becoming a member of 24 Hour and using or accessing its facilities and equipment, Decedent agreed to release 24 Hour from liability for *any claim* for injuries that might occur at or as a result of using a 24 Hour facility, including a claim for premises liability under the PLA. Because the Agreement's release of liability (or "exculpatory") provision is clear and unambiguous, was fairly entered into, and the activities covered are not violative of public policy, the provision satisfies the *Jones* test and is valid and enforceable. *See Heil Valley Ranch*, 784 P.2d at 782.

At the outset, the Agreement's exculpatory provision is both valid and enforceable since it does not "involve[] a service that the defendant is obligated to provide for the public or [that was] entered into in an unfair manner." *See Jones,* 623 P.2d at 376; *Chadwick,* 100 P.3d at 467. Regarding the type of service 24 Hour provides, the use of a fitness club certainly qualifies as a

9

"recreational service, neither publicly regulated nor of great public importance." *Chadwick,* 100 P.3d at 469.[4]  Recently in *Miller v. Crested Butte, LLC*, the Colorado Supreme Court concluded the release agreement at issue was sufficient to inform the plaintiff and did not need to provide more specific details to cover the exact incident at issue. *Miller*, 2024 CO at ¶ 48.  Additionally, the Court found the plaintiff was not at such an obvious disadvantage in bargaining power that the release agreement put him and his daughter at the mercy of the Defendant's negligence.  "[W]e have observed that in cases involving non-essential, recreational activities involving the risk of injury, exculpatory agreements like those at issue here did not give the party requiring the agreement a decisive advantage in bargaining strength so as to invalidate such agreements." *Id.* at ¶ 49.  Similarly here, the activities 24 Hour offers are purely non-essential, recreation, and there was no disadvantage in bargaining power with Decedent that warrants invalidating the Agreement.

As to whether the exculpatory language set forth in the Agreement was clear and unambiguous, the language of the Agreement contains a prominent, bolded section titled "**RELEASE OF LIABILITY AND ASSUMPTION OF RISK**," in which Decedent agreed and affirmed that 24 Hour "**will not be liable for any injury or any other damages to you**… **including, without limitation, personal, bodily, or mental injury, or economic loss** …" Agreement, ¶ 10 (emphasis in original).  The preceding language also clearly states that use of the Club and its facilities "involves the risk of injury" and required Decedent to affirm that "**[he] understand[s] and voluntarily accept[s] this risk**…." *Id.*  The Agreement's exculpatory language could not be more clear or unambiguous, even clarifying that risks may vary and include

---

[4] In fact, the 2022 Club Membership Agreement emphasizes this stating: "you understand and acknowledge that 24 Hour is providing recreational services."  *See* Agreement ¶ 10.

10

death. Indeed, the exculpatory language exceeds what is required by explicitly stating that 24 Hour Fitness is being released from claims of *premises liability*. *See id*. Use of specific terms such as "negligence" or "premises liability" is not mandatory to draft a valid release of liability. *See Heil Valley Ranch*, 784 P.2d at 785. However, 24 Hour Fitness' inclusion of these specific terms provides even greater clarity and less ambiguity. Colorado courts have even stated that language including the use of "'negligence . . . while [plaintiff is in a specific location]' has been held to clearly and unambiguously express the intent of the parties. Similarly, 'Disclosures, Disclaimers and Waivers,' 'inherent risks,' and 'RELEASE FROM ANY LEGAL LIABILITY' have clearly and unambiguously expressed the intent of the parties to exculpate the releasee from all liability for injuries during the identified activity. *Chadwick*, 100 P.3d at 468-70." *Lopez v. Bladium Denver No. 1*, 2020 Colo. Dist. LEXIS 4236, *7-8 (internal citations omitted).

Returning to the recent *Miller* decision, the Colorado Supreme Court also discussed the fourth *Jones* factor in its analysis of the following exculpatory language:

> In consideration for allowing the Participant to participate in the Activity, I AGREE, to the greatest extent permitted by law, TO WAIVE ANY AND ALL CLAIMS AGAINST AND TO HOLD HARMLESS, RELEASE, INDEMNIFY, AND AGREE NOT TO SUE Vail Resorts, Inc.,... each of [its] affiliated companies and subsidiaries, the resort owner/operator inclusive of any partner resort owner/operator,... and all their... successors in interest... FOR ANY INJURY, INCLUDING DEATH, LOSS, PROPERTY DAMAGE OR EXPENSE, WHICH I OR PARTICIPANT MAY SUFFER, ARISING IN WHOLE OR IN PART OUT OF PARTICIPANTS [sic] PARTICIPATION IN THE ACTIVITY, INCLUDING, BUT NOT LIMITED TO, THOSE CLAIMS BASED ON ANY RELEASED PARTYS [sic] ALLEGED OR ACTUAL NEGLIGENCE OR BREACH OF ANY EXPRESS OR IMPLIED WARRANTY OR BREACH OF ANY STATUTORY OR OTHER DUTY OF CARE.... I UNDERSTAND THAT NEGLIGENCE INCLUDES FAILURE ON THE PART OF ANY RELEASED PARTY TO TAKE REASONABLE STEPS TO SAFEGUARD OR PROTECT ME FROM THE RISKS, DANGERS AND HAZARDS OF THE ACTIVITY.

The plaintiff in *Miller* contended that while the release signed expressly addressed certain risks, no skier would have anticipated it would cover the specific facts in his case. *Miller*, 2024 CO at 51.  Again however, the Court was not persuaded.  Relying on *Heil Valley Ranch*, the Colorado Supreme Court concluded that the release language signed to purchase a ski pass "expressed the parties' *intentions* in clear and unambiguous language and therefore satisfied the fourth *Jones* factor." *Id.* at ¶ 53 (emphasis added).  Here, the exculpatory language in the Membership Agreement signed by Decedent is even clearer than that at issue in *Miller* and unequivocally expresses the intent of the parties to release 24 Hour from liability for injuries that occur on its property, no matter the exact facts of what may or may not have caused an injury to a member or the extent of said injury.

The exculpatory language in this case also successfully threads the needle referenced by the Tenth Circuit in *Anderson*.  The Agreement's release of liability and assumption of risk is only 10 lines long, 227 words, and the typeface includes bold font and underlining for emphasis.  There are no confusing, unnoticed provisions lurking in fine print.  24 Hour made every effort to make the release understandable and noticeable.

In sum, the Agreement contains an enforceable exculpatory provision under Colorado law, which precludes all claims against 24 Hour for personal injury.  Decedent was on 24 Hour's premises by means of his validly executed Membership Agreement.  Plaintiff cannot now avoid the terms Decedent agreed to be bound by.  Thus, even taking all allegations in the Amended Complaint as true, Plaintiff's PLA claim against 24 Hour Fitness for Decedent's claimed injuries must be dismissed as a matter of law.

**B.   <u>Plaintiff's gross negligence claim fails to plead a plausible claim for relief</u>**

As noted above, gross negligence is "the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another; such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness." *White,* 837 P.2d at 1233 n.5 (citation omitted). "The common thread that separates [the concepts of willful and wanton misconduct, willful and wanton negligence, gross negligence, reckless conduct, and reckless negligence] from ordinary negligence is that the defendant's conduct is so aggravated as to be all but intentional." *Id.* at 1233.

Plaintiff's second claim for relief averring gross negligence claim fails because her Amended Complaint is devoid of any facts that 24 Hour acted willfully and wantonly. Plaintiff claims (dubiously "upon information and belief") that 24 Hour was aware of corrosion and a leak affecting the boiler for the steam room, and that 24 Hour "consciously disregarded Mr. Diaz's safety" and breached its duty by "willfully and wantonly" failing to replace and/or repair the damaged steamer spout and/or boiler. Doc. 13 at ¶¶ 65-68. Plaintiff then concludes that 24 Hour's conduct was done "heedlessly and recklessly, without regard to the consequences, or the rights and safety of others. . ." *Id.* at ¶ 70.

Plaintiff's gross negligence claim fails to properly or plausibly articulate entitlement to relief because the pleading does not rise above mere speculation, thereby not meeting the plausibility standard required to withstand a motion to dismiss. The allegations do not plausibly allege 24 Hour acted with the necessary reckless disregard towards Decedent or anyone else. Rather, the allegations are exactly the type of bare-bones, conclusory assertions devoid of sufficient detail rejected by the Supreme Court in *Iqbal* and *Twombly*. A court is not obligated to

take as true a legal conclusion couched as a factual allegation, such as Plaintiff's conclusory allegations that 24 Hour breached a duty to maintain the steam room in a safe condition.

There are no allegations of when (or how) 24 Hour may have learned about any purported issues with the steam room spout or the boiler, or if these issues existed near the time of the incident (as opposed to ten months later when the boiler was inspected). Additionally, there is no allegation of how, if these issues did exist with the steam boiler (corrosion and or a leak), those issues had anything to do with the purported spout explosion in the steam room that purportedly *caused* the alleged injuries to Decedent. Plaintiff's allegations in support of this cause of action merely recite the elements of a gross negligence claim with minimal detail and in formulaic fashion. This Court should disregard the conclusory allegations and dismiss this claim outright.

Even taking Plaintiff's allegations as true, a failure to address a leaking or corroded boiler does not rise to the level of willful and wanton conduct needed to sustain a gross negligence claim. "[W]illful and wanton conduct 'must be not only negligent, but exhibit [a] conscious disregard for [the] safety of others.' . . . [and] is that which is 'wholly disregardful of the rights, feelings and safety of others . . . at times even imply[ing] an element of evil.'" *Martinez v. Estate of Bleck*, 2016 CO 58, 31 (internal citations omitted). Assuming 24 Hour did know of the concerns with the steam boiler (again a dubious notion), that such issues existed at the time of the incident (similarly dubious), and that 24 Hour disregarded those concerns and neglected to repair the corrosion or leak associated with the steam boiler leading to a problem with the steam room spout (fully dubious), that still does not meet the requisite and heightened standard of willful and wanton conduct because there is no suggestion the lack of action by 24 Hour was so aggravated it was all but intentional. *White*, 837 P.2d at 1233. The best that can be said of Plaintiff's claim—again even

assuming all of Plaintiff's "upon information and belief" allegations are in fact true—is that 24 Hour was merely negligent in maintaining the boiler for the steam room.

In sum, Plaintiff's limited allegations cannot support a plausible claim for gross negligence, and this cause of action should be dismissed.

### C. Plaintiff's negligence *per se* claim fails

Plaintiff's negligence *per se* claim, alleging 24 Hour violated C.R.S. § 9-4-112 by allowing an external surface on the boiler to corrode and failing to repair a leak in the front plate gasket, fails to state a claim upon which relief can be granted.

#### 1. Plaintiff's negligence *per se* claim is barred by the Premises Liability Act

Plaintiff has alleged, and 24 Hour admits, it was a landowner at the time of the incident. Thus, the PLA applies and serves as Plaintiff's only avenue for relief. *See Vigil,* 103 P.3d at 328-29. Plaintiff may not, therefore, recover under any theory of negligence. *See Lombard,* 187 P.3d at 574. This includes a theory of negligence *per se*. *Tancrede,* 401 P.3d at 134. Plaintiff's negligence *per se* claim is thus barred by the exclusivity of the PLA and should be dismissed.

#### 2. Plaintiff fails to plausibly state a negligence *per se* claim

In support of his negligence *per se* claim, Plaintiff speculates "upon information and belief" that 24 Hour "was aware that a steamer spout in the steam room at the Colorado Springs location was damaged, malfunctioning, and/or not safe for use prior to the January 13, 2023, incident[;] that the steamer spout in the steam room at the Colorado Springs location was damaged prior to the January 13, 2023, incident[;] prior to the January 13, 2023, incident, Defendant 24 Hour Fitness was aware or should have been aware that a visible leak was present in the front plate gasket of the boiler for the steam room of the Colorado Springs location[;] prior to the January 13, 2023,

15

incident, Defendant 24 Hour Fitness was aware or should have been aware the surfaces of the boiler for the steam room of the Colorado Springs location were severely and visibly corroded. Upon information and belief, prior to the January 13, 2023, incident, Defendant 24 Hour Fitness was aware or should have been aware that the severe corrosion of the surfaces of the boiler for the steam room of the Colorado Springs location resulted in a loss of strength of the metal parts of the boiler, including the steamer spout." Doc. 13 at ¶¶16, 17, 30, 31, 32.

The *factual* basis for these allegations comes solely from a report prepared by the Colorado Division of Oil and Public Safety ("DOPS") after a routine inspection on October 5, 2023. That report is attached hereto as <u>Exhibit B</u>.[5] However, Plaintiff's reliance on this report is misplaced and it cannot provide the basis for a negligence *per se* claim.

First, the report says nothing about issues with the steam spout in the steam room, the actual piece of equipment Plaintiff claims "exploded" and injured Decedent. The report identifies issues with corrosion on the boiler itself, as well as a leak in a gasket on the boiler's front plate. But Plaintiff does not (nor could she) plausibly allege that corrosion on the boiler or a leak in the front plate gasket caused Decedent's injury. Plaintiff alleges the *steam spout* malfunctioned. But the DOPS report does not identify any issues with the steam spout and without an alleged violation

---

[5] The report is referenced by Plaintiff in her Amended Complaint and thus may be considered in ruling on a Motion to Dismiss. See footnote 1. In addition, this report may be considered on a Motion to Dismiss because it is a public record. "Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence[.] However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment[.] This allows the court to 'take judicial notice of its own files and records, as well as facts which are a matter of public record.'" *Tal v. Hogan,* 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (internal citations omitted). Here, boiler inspection reports and inspection certificates can be obtained by the public after obtaining a free login at https://ops.colorado.gov/Boiler/Database.

related to the actual mechanism that Plaintiff claims failed, she cannot hope to use the DOPS report as evidence of negligence *per se*.

Second, Plaintiff fails to allege any link between corrosion on the boiler and a leak in a front plate gasket and the steam spout exploding. Plaintiff presents no facts, or even attempts to explain, how these issues are related; i.e. how corrosion and a gasket leak would lead to a steam spout exploding. Indeed, any attempt to do so would be wholly speculative and illogical.

Third, the DOPS report is dated in October 2023—ten months after Plaintiff's alleged incident. There is no note therein that, based on the amount of corrosion or the size or nature of the leak, for example, these issues had existed for several months, or anything else that would suggest these issues were related to the incident. Indeed, there are no allegations in Plaintiff's Amended Complaint linking the well-after-the fact report identifying issues with *different parts* of the steam system to the incident, nor could there be. Any such allegations would also be wholly speculative.[6]

Given the foregoing, Plaintiff's allegations about what 24 Hour knew or should have known are not well-pleaded facts and at most only allow this Court to infer the mere possibility of

---

[6] As a brief aside, and in light of Plaintiff's accusations about what it "knew or should have known," 24 Hour is compelled to point out that its boiler was inspected on October 14, 2021 and DOPS issued an Inspection Certificate noting that it was certified to be operated until October 31, 2023. *See* 2021 Inspection Certificate, attached as Exhibit C. As noted in footnote 4, above, Boiler Inspections are a matter of public record and therefore may be considered in a motion to dismiss. *See Tal v. Hogan,* 453 F.3d at n.24. So, what 24 Fitness knew or should have known about its steam boiler was, based on the Division's inspection in 2021, that it was compliant as of October 2021 was cleared to operate until the next inspection in October 2023. Plaintiff's argument that 24 Hour "knew or should have known" about issues with its boiler is wholly belied by the issuance of the 2021 Inspection Certificate. What it knew was that its boiler was compliant and nothing in the Certificate suggests it *should have known* future issues would arise—much less issues with the steam spout itself.

17

misconduct. *See Iqbal*, 556 U.S. at 679. They are also conclusory statements devoid of factual support or enhancement. *See id.* at 678 (citation omitted). Had the steam spout been flagged in the DOPS report, or had Plaintiff plausibly alleged corrosion or a gasket leak somehow caused his injury, or had the alleged corrosion and leak been identified in an inspection *before* the incident (not 10 months afterward), Plaintiff's claim might pass scrutiny under Rule 12. But as pleaded, it is based on nothing more than rank speculation.

Plaintiff has therefore failed to state a plausible claim for relief for negligence *per se*, and that claim should therefore be dismissed.

### D. **Plaintiff's fourth and fifth claims for relief do not provide an independent basis for liability**

Colorado's Wrongful Death Act allows a person's heirs to recover damages for the wrongful death of that person. C.R.S.§§ 13-21-201, -203. However, that right "does not arise from a separate tort, but instead is wholly derivative of the injury to the decedent." *Steedle v. Sereff,* 167 P.3d 135, 140 (Colo. 2007). Under these facts, a claim for wrongful death is therefore properly brought under the PLA. *See, Nordin v. Madden,* 148 P.3d 218 (Colo. App. 2006) (After husband died of carbon monoxide poisoning, wife sued alleged landowner under PLA for his wrongful death)). Therefore, such a claim is also subsumed by the PLA, and must be dismissed as a matter of law.

Similarly, Colorado's survival statute, section 13-20-101, C.R.S., merely identifies what kinds of claims survive the death of a person. C.R.S. § 13-20-101(1) ("All causes of action, except actions for slander or libel, shall survive and may be brought or continued notwithstanding the death of the person in favor of or against whom such action has accrued"). Instead of providing an independent basis for liability, the survival statute merely permits "[t]he personal representative

of the decedent's estate . . . [to stand] in the decedent's shoes[.]" *Espinoza v. O'Dell*, 633 P.2d 455, 466 (Colo. 1981); *See also Ball v. United States*, Civil Action No. 18-cv-01461-REB-NRN, 2018 U.S. Dist. LEXIS 200006, at *31 (D. Colo. Nov. 26, 2018) (applying *Espinoza* and holding that "[l]ike the Wrongful Death Act, the survival statute does not provide for an independent basis of liability.").

As set forth above, Plaintiff's three causes of action—premises liability, gross negligence and negligence *per se*—fail to state claims and must be dismissed pursuant to Rule 12(b)(6). Accordingly, there is no independent basis for these claims to survive before this Court. As such, these "claims" for damages should also be dismissed.

## V.   CONCLUSION

Plaintiff's lawsuit against 24 Hour is barred as a matter of law. Her PLA claim fails because Decedent's Membership Agreement contained a valid exculpatory clause that bars a claim for premises liability. Her gross negligence claim fails because she has not satisfied the plausibility standard for such a claim, as required to withstand a motion to dismiss. Her negligence *per se* claim fails because the PLA provides her exclusive remedy and alternatively, because she simply fails to state a plausible claim for relief under that theory of negligence. Finally, her fourth and fifth claims for relief should be dismissed because they are not standalone causes of action.

Respectfully submitted this 7th day of February, 2025.

DIETZE AND DAVIS, P.C.

*/s/ Nathan A. Klotz*
William A. Rogers, III
Nathan A. Klotz
Christina Gonsalves
*Attorneys for Defendant*
*24 Hour Fitness USA, Inc.*

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **24 HOUR FITNESS USA LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** upon all attorneys of record herein by E-Filing with the CM/ECF system on February 7, 2025.

*/s/ Cecil A. Kennedy*
Paralegal